SAMUEL D. DICKINSON, PROSECUTOR, v. THE MAYOR AND ALDERMEN AND THE BOARD OF FIRE COMMIS- SIONERS OF JERSEY CITY ET AL.

Argued February 25, 1902—Decided June 9, 1902.

1. It is a well-recognized principle, under the decisions in this state, that an existing municipal board or body cannot appoint to an office which is to come into existence or become vacant in the life of that same board or body at a time when it will be differ- ently constituted.

2. The official board or body of a municipality which is or will be in office at the time an appointee is to take his office, can alone make an appointment to such office, unless there be express legis- lative authority otherwise.

On *certiorari* to remove a resolution of the board of fire commissioners of Jersey City, passed December 18th, 1901, making appointments to and promotions in the fire depart- ment of the city.

Before Justices FORT and HENDRICKSON.

For the prosecutor, *William H. Speer, Jr.*

For the defendants, *John W. Queen* and *William D. Ed- wards.*

The opinion of the court was delivered by

FORT, J.   On June 5th, 1901, the board of fire commissioners of Jersey City adopted a resolution reciting in its preamble that in its opinion it was necessary for the better protection of life and property "that a new fire engine company be located in the vicinity of Grand street and Manning avenue," and therein resolved that the board of finance be requested to appropriate the sum of $15,000 for the purchase of the ground and the erection of a suitable building for fire department purposes thereon.

On November 25th, 1901, the board of finance adopted a resolution authorizing the issue of $12,000 of city bonds, the proceeds thereof to be set aside for the board of fire commissioners to be used to purchase a site and erect an engine house, and also agreed to purchase the site on Manning avenue for $1,125 and authorized a warrant to be drawn therefor.

On December 4th, 1901, this action of the board of finance was communicated to the board of fire commissioners.

On December 11th, 1901, the fire commissioners voted to employ an architect to prepare specifications for the new engine house on Manning avenue.

On September 10th, 1901, the board of finance had notified the fire commissioners that they had fixed the appropriation and limit of expenditure for the fire department, and sent to the fire commissioners a detailed account of the items of the appropriation.   Among these was one for a "new steam fire engine, $5,000."   These appropriations were stated by the board of finance to be "for the fiscal year beginning December 1st, 1901, and ending November 30th, 1902."

There is nothing in the record to indicate where the engine thus authorized was to be used or whether it was for the new Manning avenue fire house or company, when organized, or not.   The testimony of Charles Esterbrook, the clerk of the fire commissioners, is that "there was a new engine ordered, but I cannot state positively that it was for this new company."   From the evidence there does not appear to be any necessary connection between the ordering of the new engine and the erection of the Manning avenue engine house and the

establishing of a new engine company there. The new engine was delivered to the fire department on February 15th, 1902, and the erection of the new building for the Manning avenue fire house had not then been commenced. Nothing had then been done toward building except to purchase the land, employ the architect, approve the plans and adopt a resolution authorizing an advertisement for proposals for the work.

It appears, however, that the appropriation for the fiscal year from December, 1901, to November 30th, 1902, contained an item of appropriation for fire company No. 17 which would be a complete, new and additional fire company, as prior to that date but sixteen companies existed in Jersey City.

On December 18th, 1901, the board of fire commissioners adopted the following resolution:

"Whereas, An appropriation has been made to this board by the board of finance for the purpose of erecting a new fire engine house in the sixth ward; and

"Whereas, An appropriation has also been made for the purpose of enabling this board to organize a new engine company to be located in said ward; therefore,

"Resolved, That this board do now proceed to the organization of said company, which shall be designated and known as engine No. 17."

At the same meeting they appointed by promotion from the department a captain, engineer, stoker, steamer driver and tender driver of engine company No. 17, salaries to commence at the time their duties in the new positions should begin. A further resolution was also passed at the same time appointing Moran, Kittrick and Coughlin, "hosemen of engine company No. 17, subject to passing the necessary physical examination," salaries to commence at the time their duties should begin. It is quite apparent that this new company was to be organized and come into active service only after the new engine was received by the department, and the new engine house was erected ready for occupancy by the usual complement of men to constitute the manning of a fire company. The resolutions above recited leave no room for doubt as to the company for which the appointments were made.

By law the fire commissioners organize in Jersey City on the first of each year, and appointments are made to the fire board for terms of three years, one being made each year for that term. *Pamph. L.* 1889, *p.* 199, § 22; *Id.* 1901, *p.* 42, § 3.

The resolutions above recited provided for the appointment in December, 1901, of men whose terms of office were to begin after the new fire board of 1902 should come into existence. It is a well-recognized principle, under the decisions in this state, that an existing municipal board or body cannot appoint to an office which is to come into existence or become vacant in the life of the same board or body at a time when it will be differently constituted. The official board or body of a municipality which is or will be in office at the time an appointee is to take his office can alone make an appointment to such office, unless there be express legislative authority otherwise. This rule is founded in sound public policy. Any other rule would work for confusion and disorganization in municipal affairs. If an existing board can appoint to an office falling within the term of the next incoming board, why not for one falling in the term of the same board two or five years hence? It is not even sure that the new engine house for No. 17 will be erected during 1902. It was not commenced on February 21st, 1902, when the testimony was taken in this cause, and that was over two months after the resolution of appointment was passed. The fire house is probably still uncompleted and yet the present board of fire commissioners which organized January 1st, 1902, is over four months in its term of service. *Fitch* v. *Smith,* 28 *Vroom* 526; *Water Commissioners* v. *Cramer,* 32 *Id.* 270; *Horan* v. *Lane,* 24 *Id.* 275.

Some point was made in the case that the prosecutor had not proven that he was a citizen or taxpayer in Jersey City and hence not entitled to prosecute this writ. It not appearing in the record that that fact was challenged at the hearing or upon the proofs, it is not necessary for the prosecutor to prove it. *Avon* v. *Neptune City,* 28 *Vroom* 701; *West Jersey Traction Co.* v. *Camden,* 29 *Id.* 362; *Smalley* v. *Board of Education,* 34 *Id.* 201.

The affidavit upon which this writ was allowed does affirm that the prosecutor is a citizen and taxpayer of Jersey City, and that fact having been passed upon by the justice of the Supreme Court allowing the writ is sufficient in the state of the record before us.

The resolutions brought up by the writ which designates the appointment of certain officials for engine company No. 17 are set aside, with costs.    .