738 A.2d 974 (1999)
325 N.J. Super. 244
Manuel GONZALEZ, Petitioner-Appellant,
v.
BOARD OF EDUCATION OF the ELIZABETH SCHOOL DISTRICT, UNION COUNTY, Respondent-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued September 21, 1999.
Decided October 21, 1999.
*975 Maria M. Lepore, Trenton, for petitioner-appellant (Ms. Lepore, on the brief).
David F. Corrigan, Little Silver, for respondent-respondent Elizabeth Board of Education (Murray, Murray & Corrigan, attorneys; David A. Rapuano, of counsel and on the brief).
Terri A. Cutrera, Deputy Attorney General, for respondent-respondent State Board of Education (John J. Farmer, Jr., Attorney General of New Jersey, attorney; Mary C. Jacobson, Assistant Attorney General, of counsel; Ms. Cutrera, on the brief).
Andrew Babiak, Cherry Hill, for amicus curiae New Jersey Association of School Administrators (Mr. Babiak, on the brief).
Before Judges HAVEY, KEEFE and A.A. RODRIGUEZ.
The opinion of the court was delivered by
HAVEY, P.J.A.D.
The central issue raised by this appeal is whether a local school board is empowered to appoint a superintendent whose term would begin during the term of office of the succeeding board. Petitioner and amicus *976 curiae, New Jersey Association of School Administrators, argue that a school board's authority to make such an appointment is found in N.J.S.A. 18A:17-20.1, which requires a local school board to notify its superintendent that he or she will not be appointed at least one year before the expiration of the superintendent's term. Petitioner and amicus reason that, by enacting N.J.S.A. 18A:17-20.1, the Legislature intended to authorize a school board to appoint a new superintendent at the time of such notification, with the term of the newly-appointed superintendent beginning upon expiration of the incumbent's term. The State Board of Education concluded that such an appointment is "void ab initio." We agree with the State Board of Education and affirm.
On June 29, 1994, respondent Board of Education of the Elizabeth School District (Board), notified Thomas Dunn, the Superintendent of Schools, that his contract, expiring on June 30, 1996, would not be renewed. Dunn was relieved of his duties. However, the Commissioner of Education ruled that the local board could not ignore Dunn's statutory entitlement to the position of superintendent for the duration of his contract. Thus, the Board could relieve Dunn of his duties, but no "vacancy" would occur in his position until the expiration of his contract.[1]
On July 13, 1994, petitioner, then an assistant superintendent, was appointed acting superintendent, effective immediately. By resolution of February 8, 1995, the Board appointed petitioner superintendent for three years, beginning July 1, 1996, when Dunn's contract expired. On February 22, 1995, the Board approved an employment contract with petitioner for the three-year term.
On May 1, 1996, after the annual school board election, the newly constituted Board directed that Dunn resume his duties as superintendent, and returned petitioner to his prior position as assistant superintendent. On June 6, 1996, the Board appointed Dunn to a five-year term as superintendent, beginning July 1, 1996.
Petitioner filed a petition with the Commissioner of Education, claiming that the Board's actions breached his contract and were arbitrary, capricious and unreasonable. Petitioner demanded restoration to the position of superintendent and retroactive adjustment of his salary.
Administrative Law Judge Lucchi-McCloud, to whom the matter was assigned as a contested case, granted summary judgment to the Board. She determined that, although Dunn had been relieved of his duties as superintendent, that office was not vacant until his contract expired on June 30, 1996, since he had a statutory entitlement to the position for the duration of his contract. The ALJ reasoned that the February 1995 Board "had no authority to reach forward beyond its own official life and into the term of its successor to make a decision not due until July 1, 1996." She therefore concluded that petitioner's contract was "null and void ab initio " and that no "illegal reduction of compensation occurred...."
The Commissioner modified the initial decision of the ALJ. He agreed with petitioner that N.J.S.A. 18A:17-20.1 "appears to contemplate, indeed, compel, that local boards will anticipate vacancies by notifying superintendents of their decisions not to reappoint them `at least one year prior to the expiration' of their contracts." However, the Commissioner declined to allow a local board "unfettered power to bind future boards."
Instead, the Commissioner holds that the appropriate balance between the well-established stricture against binding future boards and the clear demands of N.J.S.A. 18A:17-20.1 may be struck by a reading which permits, apart from a current board, only that the board constituted immediately prior to twelve *977 months before the expiration of its superintendent's contract to appoint a successor. Such a reading recognizes both a board's obligation to notify its superintendent of its intentions well in advance, while still not binding future boards unnecessarily or beyond the express prescription of the statute.
Applying this interpretation, the Commissioner held that the Board "acted beyond the scope of its lawful authority" when it appointed petitioner superintendent as of July 1, 1996, by "binding both the April 1995 Board and the April 1996 Board."
The State Board rejected the "compromise" fashioned by the Commissioner, that "apart from the current board, only that board constituted immediately prior to twelve months before the expiration of its superintendent's contract [may] appoint a successor." The State Board agreed with the ALJ that the February 1995 contract, effective July 1996, was "void ab initio" and held that it could not be ratified by later conduct of the Board. It thereupon affirmed the Commissioner's decision to grant summary judgment "substantially for the reasons expressed by the ALJ in [her] initial decision...."

I
N.J.S.A. 18A:17-20.1 provides:
At the conclusion of the term of the initial contract or of any subsequent contract as hereinafter provided, the superintendent shall be deemed reappointed for another contracted term of the same duration as the previous contract unless either: a. the board by contract reappoints him for a different term which term shall be not less than three nor more than five years, in which event reappointments thereafter shall be deemed for the new term unless a different term is again specified; or b. at least one year prior to the expiration of the first or any subsequent contract the board shall notify the superintendent in writing that he will not be reappointed at the end of the current term, in which event his employment shall cease at the expiration of that term.

[Emphasis added.]
Petitioner and amicus argue that since N.J.S.A. 18A: 17-20.1 requires a local board to notify its incumbent superintendent that he or she will not be reappointed at least one year before the expiration of the superintendent's term, the Legislature must have intended to authorize a local board to appoint a new superintendent at the time of that notification. We disagree.
The common-law rule is that a public body empowered to appoint a public officer "may not forestall the rights and obligations of [its] successor by making an appointment where the term of the appointee will not take effect until after the expiration of the term of the appointing [body]." Georgia v. Suruda, 154 N.J.Super. 439, 448, 381 A.2d 821 (Law Div.1977). In Georgia, the Law Division applied this common-law rule to invalidate the appointments of two members to the Jersey City Board of Education by the lame-duck mayor. Their terms were not to begin until after the new mayor was sworn in. The court applied N.J.S.A. 40A:9-156, which, it said, "is in essence a restatement of that rule." Ibid.[2]
Similarly, in Pashman v. Friedbauer, 4 N.J.Super. 123, 126, 66 A.2d 568 (App.Div. 1949), the Board of Commissioners of the City of Passaic established a municipal court and assigned it to the Department of Public Safety, whose director appointed defendant to the position of municipal magistrate in December 1948, effective January 16, 1949. Ibid. Later, in December 1948, the Board assigned the municipal court to the Department of Public Affairs, *978 whose director appointed plaintiff to the same position, effective January 16, 1949. Id. at 126-27, 66 A.2d 568. The court invalidated the first appointment as prospective, since the Director of Public Safety was not empowered to fill the vacancy when it arose in January 1949. Id. at 127, 66 A.2d 568. The court cited the commonlaw rule that a public officer shall not forestall the right and prerogative of his or her successor by making a prospective appointment to fill an office, the term of which does not begin until his or her own term and power to appoint has expired. Ibid. See also Dickinson v. Mayor of Jersey City, 68 N.J.L. 99, 102, 52 A. 278 (Sup.Ct.1902). This is the prevailing rule throughout the country. See 3 McQuillin on Municipal Corporations § 12.83 (3d ed. rev.1990) and cases annotated therein.
The policy considerations grounding the common-law rule are self-evident. Such a prospective appointment usurps the will and power of a future board to fill a vacancy based on the future board's consideration of prevailing policy, personnel and general welfare concerns. Moreover, any other rule "would work for confusion and disorganization" in the affairs of the public body. Dickinson, supra, 68 N.J.L. at 102, 52 A. 278. If an existing board can make an appointment effective within the term of the next succeeding board, "why not for one falling in the term of the same board two or five years hence?" Ibid.
Here, the Board's appointment of petitioner in February 1995 clearly violated the common-law rule, since the position was effective upon the expiration of Dunn's term on July 1, 1996. A board of education is a noncontinuous body whose authority is limited to its own official life and whose actions can bind its successors only in those ways and to the extent expressly provided by statute. Skladzien v. Board of Educ., 12 N.J. Misc. 602, 604-05, 173 A. 600 (Sup.Ct.1934), aff'd, 115 N.J.L. 203, 178 A. 793 (E. & A.1935). No statutory authority is found under Title 18A expressly authorizing a local board to make such prospective appointments.

II
We reject petitioner's and amicus' argument that N.J.S.A. 18A:17-20.1, by implication, authorizes such an appointment. First, the construction advanced by petitioner and amicus is in direct conflict with established common law. "In the absence of a clear manifestation to the contrary, we shall not impute to the Legislature an intention to change established law." State v. Dalglish, 86 N.J. 503, 512, 432 A.2d 74 (1981).
Further, "[c]onstruction of any statute necessarily begins with consideration of its plain language." Merin v. Maglaki, 126 N.J. 430, 434, 599 A.2d 1256 (1992). We must enforce the legislative will as expressed by the clear language of the statute, and not presume that the Legislature intended something not expressly stated. In re Howell Township, 254 N.J.Super. 411, 419, 603 A.2d 959 (App. Div.), certif. denied, 127 N.J. 548, 606 A.2d 362 (1991). It cannot be presumed by the clear and unambiguous language of N.J.S.A. 18A:17-20.1 that the Legislature intended to empower a present board to bind a future board with appointments to take effect during the tenure of a future board. It merely provides that a superintendent will be deemed reappointed when the superintendent's contract expires, unless the board has notified him or her at least one year in advance that he or she will not be reappointed. Significantly, the statute is silent as to when the successor should be reappointed.
Finally, when construing a statute, we consider not only the provision in question, but the entire legislative scheme. Fiore v. Consolidated Freightways, 140 N.J. 452, 466, 659 A.2d 436 (1995). "Our task is to harmonize the individual sections and read the statute in the way that is most consistent with the overall legislative intent." Ibid. N.J.S.A. 18A: 17-20.1 was *979 part of a package of amendments and additions to Chapter 17 of Title 18A relating to the terms of office of superintendents, which removed lifetime tenure for superintendents appointed after August 24, 1991. See L. 1991, c. 267, §§ 1-9 (codified as N.J.S.A. 18A:17-15 to -20.5). The 1991 amendments provide that a board "may, by contract" appoint a superintendent "for a term of not less than three nor more than five years." N.J.S.A. 18A: 17-15. The statement of the Assembly Education Committee declared:
This bill revises existing law regarding the tenure of a superintendent of schools to substitute for the present career tenure a period of tenure for the duration of the contract between the local board of education and the superintendent. Under the bill's provisions, the term of the contract between the board and the superintendent is to be not less than three years nor more than five years.
[Assembly Educ. Comm., Statement to Assembly Bill No. 1131 (1991).]
The legislative scheme fashioned a tradeoff. A board has the flexibility of granting a three to five-year term without having to suffer the lifetime tenure of a superintendent who has lost the board's confidence. In exchange, the appointed superintendent is given the security of a determinate term, immunizing him or her from dismissal at the whim of future boards.
N.J.S.A. 18A:17-20.1 was added to fortify a superintendent's rights by providing for automatic reappointment to a new "contracted term of the same duration" if the board fails to give at least one-year notice of its intention not to reappoint. It also provides a superintendent who has received such notice ample lead time to seek new employment. It therefore must be construed as accommodating superintendents under contract, not as giving license to a board to reach forward beyond its official life by making an appointment effective after expiration of the incumbent superintendent's term.
We are mindful of petitioner's and amicus ' argument that precluding local boards from making appointments, as the Board did here, will leave new boards with a narrow two-month window, between May (the date the new board is constituted) and July (the expiration of the superintendent's contract) to find a new superintendent. They assert that "it is recognized in the educational community that a search for a new superintendent can take up to one year or more." Thus, it is argued, a board aware of a vacancy in the office of superintendent to occur a year or more in advance might find, but lose, the perfect candidate because it cannot make a commitment before May of the year in which the new superintendent is to begin.
We have no record before us to test the correctness of the concerns expressed by petitioner and amicus. Moreover, neither petitioner nor amicus have explained why a responsible board could not or would not begin the search during its term, but leave the ultimate decision to its successor, or why the new board could not appoint an acting superintendent during the search process. In any event, it is our view that such concerns, if justified, should be expressed to the Legislature, the body politic having the power to address them by appropriate amendment to the statute.

III
Petitioner argues that if there was an irregularity in the appointment and award of his contract, the appointment and award were at most "voidable," and the Board "ratified" his appointment and contract by resolution on July 26, 1995. In Summer Cottagers' Ass'n v. Cape May, 19 N.J. 493, 504, 117 A.2d 585 (1955), the Court observed that:
There is a distinction between an act utterly beyond the jurisdiction of a municipal corporation and the irregular exercise of a basic power under the legislative grant in matters not in themselves jurisdictional. The former are ultra vires in the primary sense and void; the *980 latter, ultra vires only in a secondary sense which does not preclude ratification or the application of the doctrine of estoppel in the interest of equity and essential justice.
See also Wood v. Borough of Wildwood Crest, 319 N.J.Super. 650, 657, 726 A.2d 310 (App.Div.1999); Independence One Mortgage Corp. v. Gillespie, 289 N.J.Super. 91, 94, 672 A.2d 1279 (App.Div.1996). Consequently, "[a] void act is a nullity and can never be cured by subsequent events, because it is an act by a public official `utterly without capacity' to act in that manner." Ibid. (quoting Bauer v. City of Newark, 7 N.J. 426, 434, 81 A.2d 727 (1951)). On the other hand, a public body can ratify a public contract when the deficiency invalidating it consists only of the exercise of an authorized but imperfectly executed power. Johnson v. Hospital Serv. Plan of New Jersey, 25 N.J. 134, 140, 135 A.2d 483 (1957).
In our view, petitioner's February 1995 appointment and award of contract were void ab initio because they were made in direct contravention of the common-law rule and without any express or implied statutory authority. As such, they were acts "utterly beyond [the Board's] jurisdiction," rather than an "irregular exercise of a basic power." Summer Cottagers' Ass'n, supra, 19 N.J. at 504, 117 A.2d 585. See DiPaolo v. Passaic County Board of Chosen Freeholders, 322 N.J.Super. 487, 490, 731 A.2d 519 (App.Div.1999) (holding that since governing statute sets forth no term of office for county adjuster and does not authorize board of freeholders to set a term, five-year appointment by outgoing board was ultra vires act).
Even if we were to accept petitioner's proposition that the Board's February 1995 actions were merely "voidable," there was no subsequent action by the new board ratifying his appointment and contract. "[R]atification of irregular contracts for goods or services is permitted only after full compliance with all statutory conditions precedent." Casamasino v. City of Jersey City, 158 N.J. 333, 345, 730 A.2d 287 (1999). The 1996 board did not reconfirm or ratify its appointment of petitioner in accordance with N.J.S.A. 18A:17-15. Petitioner also ignores the fact that on or after May 1, 1996, the new board appointed Dunn as superintendent for a five-year period and returned petitioner to his position as assistant superintendent.[3]

IV
We reject petitioner's contention that the Board was time-barred from challenging its prior appointment of petitioner because the Board failed to file a petition with the commissioner within ninety days of its February 1995 actions. Petitioner cites N.J.A.C. 6:24-1.2(c), which requires that to initiate a contested case, a petitioner "shall file a petition no later than the 90th day of receipt of the notice of a final order, ruling or other action by the district board of education, individual party, or agency, which is the subject of the requested contested case hearing." Petitioner points out that the "commissioner shall have jurisdiction to hear and determine... all controversies and disputes *981 arising under the school laws...." N.J.S.A. 18A:6-9; Bower v. Board of Educ., 149 N.J. 416, 420, 694 A.2d 543 (1997). He reasons that the new board was therefore required to file a petition with the commissioner within ninety days of the prior board's 1995 actions. We disagree.
First, the "controversy" or "dispute" involved here did not arise until the Board had Dunn resume his duties as superintendent and returned petitioner to his position as assistant superintendent in May 1996. Further, petitioner cites no authority for the proposition that a local board must file a petition with the commissioner in order to rescind or change its prior action. Independence One Mortgage Corp., cited by petitioner, is distinguishable. There, a mortgagor of foreclosed property sought to void a sheriff's sale because it was conducted at 11 a.m. in violation of N.J.S.A. 2A:61-4. 289 N.J.Super. at 93, 672 A.2d 1279. We held that the sale was voidable as opposed to ultra vires because the sheriff was authorized to sell the property, but that authority was "imperfectly executed." Id. at 94, 672 A.2d 1279. However, we concluded that defendant was precluded from challenging the sale because she failed to do so in a timely manner. Id. at 94-95, 672 A.2d 1279.
Here, as stated, the "controversy" arose when the Board rescinded petitioner's appointment in May 1996, not when it initially appointed him in February 1995. Since petitioner was the party challenging this action, it was incumbent upon him, not the Board, to file a petition with the commissioner. Petitioner did so in a timely manner.

V.
Petitioner raises the following additional points:
Point IIIThe State Board decision must be reversed as it fails to enforce a binding contract entered into between the Board and the [petitioner].
Point IV[Petitioner] was entitled to full recognition for previous service on the salary scale when he was returned to the position of assistant superintendent.
Point V The Elizabeth Board is barred from challenging the prior appointment of [petitioner] to the position of superintendent, effective July 1,1996.
A. The Elizabeth Board is out of time to collaterally attack the actions of the Board in February 1995.
B. The prior board's action was already challenged by Thomas Dunn, Jr. and determined to be legal and proper.
Point VIThe decision of the State Board was arbitrary and capricious and must be overturned.
We have considered the contentions and supporting arguments and are satisfied they are without merit and do not warrant extensive discussion. R. 2:11-3(e)(1)(D) and (E).
Affirmed.
NOTES
[1] Dunn v. Elizabeth Board of Educ., 96 N.J.A.R.2d (EDU) 279, 284 (1995).
[2] N.J.S.A. 40A:9-156 provides in part:

No appointment of any officer shall be made by the mayor or other chief executive officer or by the governing body of any municipality where the term of the office is to commence after the expiration of the term of the officer making the appointment or of any member of the governing body.
[3] In support of his argument that the new board "ratified" his contract, petitioner refers to a July 26, 1995 resolution pertaining to the Commissioner's decision in Dunn, supra, rendered after the Board had relieved Dunn of his position as superintendent. Pursuant to the Commissioner's decision, the Board "relieved" Dunn of his rights and duties as assistant superintendent of schools. The resolution has a "whereas" clause stating that "the subsequent actions of the Board appointing [petitioner] to the position of Acting Superintendent and the awarding of a three-year contract for the position of Superintendent of Schools to [petitioner] commencing July 1, 1991 also have been upheld." This "whereas" clause has no legal consequence since a preamble to a resolution is not to be given substantive effect "particularly where the enacting portion of the [resolution] is expressed in clear and unambiguous terms." PRB Enters., Inc. v. South Brunswick Planning Board, 105 N.J. 1, 5-6, 518 A.2d 1099 (1987). More importantly, the purpose of the resolution was to relieve Dunn of his rights and duties as assistant superintendent, a position for which he held tenure; it cannot be read as an express or even implied ratification of the Board's February 1995 contract award to petitioner.