Mr. Eddy R. Easley, Prosecuting Attorney Seventh Judicial District 215 East Highland, Suite 4 Malvern, AR 72104
Dear Mr. Easley:
You have requested an Attorney General opinion concerning the applicability of a non-emergency ordinance.
More specifically, you state that a county enacted an ordinance that created a public facilities board to administer and operate an emergency communications facility for the county. The county did not adopt an emergency clause for the ordinance. It therefore did not go into effect immediately. During the time period between the ordinance's passage and the date on which it was to go into effect, the county judge appointed the members of the public facilities board that was created by the ordinance, and these members were confirmed by the quorum court.
Regarding this situation, you have asked:
 Were the appointments that were made to the public facilities board after the passage of the ordinance but before its effective date valid?
RESPONSE
Summary of Opinion
The issue you have raised is not explicitly addressed by state law.[1]
Nevertheless, a certain line of general common law, as well as certain analogous lines of Arkansas law, lead me to conclude that appointments should not be made to positions before the effective date of the ordinance creating such positions if the act of making such appointments will deprive a subsequent, differently-constituted appointing agent of the opportunity to make the appointments. You have not indicated that the county judge who made the appointments was a different county judge than the one who was in office on the effective date of the ordinance, nor have you indicated that the quorum court who confirmed the appointments was comprised of different members at the time of the confirmations than on the effective date of the ordinance. If the county judge and the quorum court were the same after the effective date of the ordinance, the appointments and confirmation were not impermissible. If, on the other hand, the county judge and quorum court were different after the effective date of the ordinance, the appointments and confirmation are subject to challenge. Nevertheless, I must note that board members who were appointed in this impermissible way constitute de facto officers whose acts are valid. These issues will be discussed more fully below.
The Applicable Common Law Principle
Although the Arkansas courts have not addressed this precise issue, other states' highest courts have done so. The weight of authority in those states appears to be that a body that has the power to appoint does not have the authority to make prospective appointments if the act of making such appointments would deprive their differently-constituted successors of the opportunity to make the appointments (unless there is explicit statutory authority to do so). The principle is stated in 3 McQuillin on Municipal Corporations, § 12.83, as follows:
 [A] council not being constituted as it will be when the term of office will expire has no authority to appoint a successor of the incumbent before the expiration of the current term. The official board or body of a municipality which is or will be in office at the time an appointee takes his or her office can alone make an appointment to such office, unless there be express legislative authority otherwise. [Citations omitted.]
3 McQuillin on Municipal Corporations, § 12.83 (3d ed., rev. 1990).
An example of this principle can be found in Gonzales v. Board ofEducation of the Elizabeth School District, Union County,325 N.J. Super. 244, 738 A.2d 974 (1999). In that case, the Superior Court of New Jersey applied the principle to a school board. The school board in question appointed a superintendent whose term was not to begin until after a successor board came into office. When the successor board was in place, it removed the superintendent and replaced him with another appointee. The removed superintendent sued, but the court granted summary judgment to the board. The New Jersey Superior Court affirmed, relying on "the common-law rule that a public officer shall not forestall the right and prerogative of his or her successor by making a prospective appointment to fill an office, the term of which does not begin until his or her own term and power to appoint has expired." Id. at 251-52 and 978. The court also stated:
 The policy considerations grounding the common-law rule are self-evident. Such a prospective appointment usurps the will and power of a future board to fill a vacancy based on the future board's consideration of prevailing policy, personnel and general welfare concerns. Moreover, any other rule "would work for confusion and disorganization" in the affairs of the public body. Dickinson, supra, 68 N.J.L. at 102, 52 A. 278. If an existing board can make an appointment effective within the term of the next succeeding board, "why not for one falling in the term of the same board two or five years hence?" Ibid.
Id. at 252 and 978, citing Dickinson v. Mayor of Jersey City, 68 NJL 9952 A. 278 (1902).
The Analogous Arkansas Law
As previously stated, the Arkansas court has not had occasion to address a situation involving a questionable prospective appointment. It has, however, addressed an analogous issue. The court has held that the acts of a board are not binding on subsequent boards, and can therefore be reversed by subsequent boards. For example, in Brown v. Gardner,232 Ark. 197, 334 S.W.2d 889 (1960), the Cherry Hill School District entered into a consolidation agreement with the Perryville School District. Under that agreement, a condition for the consolidation was that a one-room school be maintained at Cherry Hill as long as ten students were in attendance. The Perryville School Board later discontinued the school, even though there were still ten students in attendance. Certain electors and patrons of the former Cherry Hill district sued the Perryville School Board, seeking (among other remedies) dissolution of the consolidation, on the grounds that the agreement had been violated.
The court rejected the argument, stating:
 There is no statutory authority giving school directors the power to enter into contracts agreeing to maintain a school at a certain place indefinitely. The powers of school directors are conferred by law for public purposes, and the exercise thereof, involving as it does a matter of future policy properly subject to change to meet changing conditions, cannot be restricted by an agreement of the nature of the one here involved. To hold otherwise would create a school at Cherry Hill not subject to change by anyone as long as the condition is met.
Brown v. Gardner, 232 Ark. at 199. Accord, Martin v. Frazier,291 Ark. 120, 722 S.W.2d 835 (1987) (upholding the closing of an elementary school in contravention of a previous school board's consolidation agreement); Bates v. Orr, 236 Ark. 499, 367 S.W.2d 122 (1963) (upholding school board's choice of alternative site for school in contravention of term of a previous board's consolidation agreement); Fomby School DistrictNo. 26 v. Williams, 203 Ark. 235, 156 S.W.2d 220 (1941) (holding that term of a previous board's consolidation agreement requiring that schools be maintained at certain locations was "surplusage" and could not bind subsequent school board).
Similarly, in School Dist. 18 v. Grubbs Spl. Sch. Dist., 184 Ark. 863,43 S.W.2d 765 (1931), cited in Brown, supra, a consolidation between two school districts was challenged. One of the bases for the challenge was that one of the school districts should be estopped from availing itself of the benefits of the consolidation, because prior to the consolidation, members of the two school districts' boards had entered into a contract under which they agreed that one of the districts would not acquire territory of the other district. The court rejected this argument, finding that the "contract" in question could not be upheld. The court found various flaws in the validity of the contract, among which was its attempt to prohibit future changes in the two districts' boundaries. Because such changes were clearly within the power of the legislature, a contract that would attempt to inhibit that power was not valid. See also East Poinsett County Sch. Dist. No. 14 v. Massey,315 Ark. 163, 866 S.W.2d 369 (1993) (upholding legislation that interfered with board action that purported to bind subsequent boards).
Upon consideration of the weight of authority in other jurisdictions concerning prospective appointments, as well as the Arkansas court's treatment of the analogous issue of attempts to bind future boards, I conclude that if the Arkansas high courts were presented with the issue you have raised, they would find that appointments such as the ones you have described should not be made if the county judge and the board that will be in office after the effective date of the ordinance would be constituted differently than at the time the appointments were made.
I reiterate that this prohibition appears to apply only in situations where the officers who have the power of appointment (and confirmation) would be different after the effective date of the ordinance creating the new positions. If these officers would be the same, no authority has been usurped.[2] Again, you have not indicated whether this is the case in the situation you have described. Whether there has been a change in the appointing agent is a question of fact.
I note that it might be argued, on the basis of the broad grant of authorities to counties to conduct local affairs, that the appointments in question were valid, even though they were made before the effective date of the ordinance creating the board. I acknowledge that county judges are charged with the responsibility of "administer[ing] ordinances enacted by the Quorum Court," Ark. Const. Am. 55, § 3; A.C.A. §14-14-1101(a)(4), and more explicitly with the responsibility of appointing members of a public facilities board that has been created by the quorum court. A.C.A. § 14-137-108. I also acknowledge that the quorum court is empowered to exercise local legislative authority that is not prohibited by state law (such as the power to confirm the appointment of facilities board members, A.C.A. § 14-137-108). See Ark. Const., Am. 55, § 1; A.C.A. § 14-14-801. Nevertheless, it is my opinion that the Arkansas courts would deem the above-discussed lines of authority to be sufficient to prohibit such appointments.
De Facto Officers
If the appointments you have described were made impermissibly, as discussed above, the board members who were appointed are nevertheless defacto officers. As discussed below, the acts of de facto officers are valid and cannot be collaterally attacked.
The Arkansas Supreme Court has described de facto status as follows:
 "An officer de facto is one who by some color of right is in possession of an office and for the time being performs its duties with public acquiescence, though having no right in fact. His color of right may come from an election or appointment made by some officer or body having colorable but no actual right to make it; or made in such disregard of legal requirements as to be ineffectual in law; or made to fill the place of an officer illegally removed; or made in favor of a party not having the legal qualifications or it may come from public acquiescence in the officer holding without performing the precedent conditions, or holding over under claim of right after his legal right has been terminated; or possibly from public acquiescence alone when accompanied by such circumstances of official reputations as are calculated to induce people, without inquiry, to submit to or invoke official action on the supposition that the person claiming the office is what he assumes to be."
Faucette Mayor v. Gerlach, 132 Ark. 58, 60, 200 S.W. 279 (1918), quoting Cooley on Constitutional Limitations (7th ed. at 897-98) (emphasis added).
The court explained the concept of a "colorable" right in the context of describing a court that was created "under color of law." The court stated:
 When a court is organized under color of law, e.g., when its creation is authorized by law, but the proceedings creating it are irregular or defective, it is a de facto court, and its judgments and proceedings are not open to collateral attack.
Landthrip, 268 Ark. at 50 (emphasis added).
If, in the situation you have described, the appointing agents made the appointments impermissibly as discussed above, their appointments, in my opinion, would have been made "under color of law," as the Arkansas Supreme Court has explained that concept. Their appointees, under those circumstances, would constitute de facto board members.
The Arkansas Supreme Court and Arkansas Court of Appeals have held many times that the acts of de facto officers are valid and enforceable. See,e.g., Bell v. State, 334 Ark. 285, 973 S.W.2d 806 (1998) (assistant attorney general's participation in prosecution as de facto prosecutor did not render conviction invalid); Chronister v. State,55 Ark. App. 93, 931 S.W.2d 444 (1996) (city attorney serving as de facto
prosecutor was valid prosecution); Dilday v. State, 300 Ark. 249,778 S.W.2d 618 (1989);); Appleby v. Belden Corp.,22 Ark. App. 243, 738 S.W.2d 807
(1987) (Acts of de facto Workers' Compensation commissioners were valid); Casey v. Self, 236 Ark. 496, 367 S.W.2d 114 (1963) (order of defacto judge was enforceable); Brown v. Anderson, 210 Ark. 970,198 S.W.2d 188 (1946) (affidavits given by affiants who were sworn in by defacto notary public were valid); Forrest City Gro. Co. v. Catlin, Executor,193 Ark. 148, 97 S.W.2d 910 (1936) (mortgage acknowledged before de facto
notary was valid).
On the basis of the foregoing, I conclude that if the appointments you have described were impermissible prospective appointments, the appointees were de facto officers whose acts as board members were valid. I note that although the acts of de facto officers cannot be collaterally attacked, the de facto officers themselves can be removed. See Looper v.Thrash, 334 Ark. 212, 972 S.W.2d 250 (1998)
Finally, I must emphasize once again that Arkansas law does not explicitly address the precise issue that you have raised. In the absence of such explicit guidance, I believe that my interpretation of the issue is reasonable in light of the treatment of the issue by other states' courts, and in light of the Arkansas courts' treatment of analogous issues.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SA/cyh
[1] I note that I have not been provided with a copy of the ordinance in question. In answering your question, I am assuming that the language of the ordinance does not address the issue you have raised.
[2] Indeed, in a situation where the same people will be carrying out the appointment and confirmation after the effective date of the ordinance, a prospective appointment may be preferable because of the greater efficiency of placing the new board in a position to begin functioning as soon as it is legally empowered to do so. In this situation (i.e., where the appointing officers will not change), the act of appointing and confirming the members of a newly created board position before the board begins to function is not significantly different than what happens in every regular election. That is, in a regular election, officers are chosen by the electorate in November to fill positions in which they cannot function until January 1. If the election were held after January 1, the same electorate would be responsible for choosing the officer. (In this vein, I have previously opined that it is permissible to hold both primary elections and special elections for positions that are not yet vacant, when it is known that the positions will become vacant. See Ops. Att'y Gen. Nos. 2000-206; 2000-087.) Appointing board members before they can actually function on the board seems no different in a situation where the officers appointing and confirming them will not be different after the appointees can legally function.