(Slip Opinion)

# Authority of the President to Prospectively Appoint a Supreme Court Justice

If the Senate votes to confirm Judge Ketanji Brown Jackson as an Associate Justice of the Supreme Court, the President may complete her appointment to the Supreme Court by signing her commission before Justice Breyer's resignation takes effect.

April 6, 2022

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

You have asked whether the President may prospectively appoint Judge Ketanji Brown Jackson as an Associate Justice of the Supreme Court upon the Senate's providing the President notification of the confirmation, even though the actual vacancy in the office of Associate Justice is not expected to occur until the Court rises for the summer recess this year. On January 27, 2022, Justice Stephen Breyer notified the President that he had "decided to retire from regular active judicial service" and that he "intend[ed] this decision to take effect when the Court rises for the summer recess this year . . . assuming that by then my successor has been nominated and confirmed." *See* Letter for Joseph R. Biden Jr., President, from Stephen Breyer, Associate Justice of the Supreme Court (Jan. 27, 2022) ("Breyer Resignation Letter"). The President subsequently nominated Judge Jackson to fill Justice Breyer's seat on the Court, and the Senate is expected to vote soon on whether to provide its advice and consent to the nomination. *See* PN 1783, Nomination of Ketanji Brown Jackson—Supreme Court of the United States, 117th Cong. (2022), https://www.congress.gov/nomination/117th-congress/1783.

Our Office has taken the position that prospective appointments are permissible for vacancies anticipated to occur during the appointing official's own term of office. *See* Memorandum for Harlington Wood, Jr., Associate Deputy Attorney General, from William H. Rehnquist, Assistant Attorney General, Office of Legal Counsel, *Re: Delay in Induction of Judge into Office Following His Confirmation by the Senate* (Nov. 27, 1970) ("Rehnquist Memorandum"). Consistent with this view, we conclude that, if the Senate votes to confirm Judge Jackson, the President may complete her appointment to the Supreme Court by signing her commission before Justice Breyer's resignation takes effect. Judge Jackson will not, however, assume the office of Associate Justice until Justice

Breyer's resignation is effective. *See Power of the President to Nominate and of the Senate to Confirm Mr. Justice Fortas to Be Chief Justice of the United States and Judge Thornberry to Be Associate Justice of the Supreme Court*, 3 Op. O.L.C. 154, 155 & n.2 (1968) (attached to *Resignation of the Head of a Department Effective Only upon the Confirmation and Appointment of a Successor*, 3 Op. O.L.C. 152 (1979)) ("*Power of the President to Nominate*"). Once his resignation is effective, she would then take the oaths as prescribed by the Constitution and statute. U.S. Const. art. VI, cl. 3; 28 U.S.C. § 453 (expressly providing that a person appointed to judicial office must take the oath prescribed by that statute "before performing the duties of his office").

## I.

Article II of the Constitution provides that the President

> shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law[.]

U.S. Const. art. II, § 2, cl. 2. It further provides that the President "shall Commission all the Officers of the United States." *Id.* § 3, cl. 1.

Consistent with this text, three steps are required for completion of the appointment of a Senate-confirmed officer: first, presidential nomination; second, Senate advice and consent; and third, presidential appointment. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 155–57 (1803); *Appointments to Office—Case of Lieutenant Coxe*, 4 Op. Att'y Gen. 217, 219 (1843). Each of these steps is a "distinct operation[]," *Marbury*, 5 U.S. at 155, and each is completely "discretionary" within the hands of the relevant actor, *Appointment of a Senate-Confirmed Nominee*, 23 Op. O.L.C. 232, 232 (1999). The President alone nominates, the "Senate has the sole responsibility of consenting to the President's choice," *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 487 (Kennedy, J., concurring in the judgment, joined by Rehnquist, C.J., & O'Connor, J.), and the President thereafter must take a "final public act . . . to complete the appointment," *Appointment of a Senate-Confirmed Nominee*, 23 Op. O.L.C. at 232. The process is not complete until "the last act . . . has been performed," a step

that may be evidenced by a signed commission. *Marbury*, 5 U.S. at 157; *see Nat'l Treasury Emps. Union v. Reagan*, 663 F.2d 239, 242 (D.C. Cir. 1981) (noting that, at that time, that had been "the rule" for "more than one hundred and seventy-five years").

Federal judges and justices may retire either completely or from regular active service. *See* 28 U.S.C. § 371. It is typical for a federal judge, as Justice Breyer did here, to announce the intention to retire by sending a letter to the President indicating that they will step down on a specific date or on the occurrence of a specific contingency.

Although in this situation a vacancy does not arise until the effective date of the Justice's retirement, we have long recognized that the President may nominate in anticipation of such a vacancy. *See Nominations for Prospective Vacancies on the Supreme Court*, 10 Op. O.L.C. 108, 108–09 (1986) ("*Prospective Vacancies*"); *Power of the President to Nominate*, 3 Op. O.L.C. at 157–58. Indeed, prospective nominations have become common with respect to anticipated vacancies on the Supreme Court. Since 1986, twelve individuals have been nominated prospectively to the Supreme Court, including Judge Jackson.[1]

---

[1] *See* Supreme Court of the United States, *Justices 1789 to Present*, https://www. supremecourt.gov/about/members_text.aspx (providing the date each justice's service terminated); PN 1184, Nomination of William H. Rehnquist—The Judiciary, 99th Cong. (1986), https://www.congress.gov/nomination/99th-congress/1184; PN 1193, Nomination of Antonin Scalia—The Judiciary, 99th Cong. (1986), https://www.congress.gov/ nomination/99th-congress/1193; PN 456, Nomination of Clarence Thomas—Supreme Court of the United States, 102d Cong. (1991), https://www.congress.gov/nomination/ 102nd-congress/456; PN 422, Nomination of Ruth Bader Ginsburg—Supreme Court of the United States, 103d Cong. (1993), https://www.congress.gov/nomination/103rd-congress/422; PN 1399, Nomination of Stephen G. Breyer—Supreme Court of the United States, 103d Cong. (1994), https://www.congress.gov/nomination/103rd-congress/1399; PN 786, Nomination of John G. Roberts Jr.—The Supreme Court of the United States, 109th Cong. (2005), https://www.congress.gov/nomination/109th-congress/786; PN 978, Nomination of Harriet Ellan Miers—Supreme Court of the United States, 109th Cong. (2005), https://www.congress.gov/nomination/109th-congress/978; PN 1059, Nomination of Samuel A. Alito Jr.—Supreme Court of the United States, 109th Cong. (2006), https://www.congress.gov/nomination/109th-congress/1059; PN 506, Nomination of Sonia Sotomayor—The Supreme Court of the United States, 111th Cong. (2009), https:// www.congress.gov/nomination/111th-congress/506; PN 1768, Nomination of Elena Kagan—The Supreme Court of the United States, 111th Cong. (2010), https://www. congress.gov/nomination/111th-congress/1768; PN 2259, Nomination of Brett M. Kavanaugh—Supreme Court of the United States, 115th Cong. (2018), https://www.

We have also recognized that, after the Senate provides its advice and consent, "[t]he President is authorized to make prospective appointments to any office the term of which begins before January 20 [of the year his term ends]." *See* Memorandum for John D. Calhoun, Assistant Deputy Attorney General, from Robert Kramer, Assistant Attorney General, Office of Legal Counsel, *Re: Prospective Appointments by the President* (Apr. 7, 1960). As a "general rule," "a prospective appointment to fill a vacancy sure to occur in a public office, made by an officer who[]. . . is empowered to fill the vacancy when it arises, is, in the absence of a law forbidding it, a valid appointment, and vests title to the office in the appointee." *Id.* at 1 n.1 (quoting 67 C.J.S. Officers § 30). The President could not "forestall the rights and prerogatives of [his] own successors by appointing successors to offices expiring after [his] power to appoint has itself expired," Floyd R. Mechem, *Treatise on the Law of Public Offices and Officers* § 133, at 67 (1890), but there is otherwise no general limitation on the President's authority to make appointments in advance of an impending vacancy.[2]

The Office has previously noted that historical practice supports the President's authority to make prospective appointments of judicial officers, including an Associate Justice of the Supreme Court.[3] In *Power of the President to Nominate*, this Office provided several examples of judges who were appointed by the President prior to the effective date of the outgoing official's resignation, including: Judge J. Skelly Wright, who was appointed on March 30, 1962, to succeed Judge E. Barrett Prettyman, who did not retire until April 15, 1962, 3 Op. O.L.C. at 156; Justice

---

congress.gov/nomination/115th-congress/2259; PN 1783, Nomination of Ketanji Brown Jackson—Supreme Court of the United States, 117th Cong. (2022), https://www.congress.gov/nomination/117th-congress/1783.

[2] Consistent with these long-established principles, many state courts have recognized that appointments for prospective vacancies generally are permissible if the appointing authority could make them when the vacancy occurs. *See Murphy v. Pearson*, 667 S.E.2d 83, 85 (Ga. 2008); *Gonzalez v. Bd. of Educ. of Elizabeth Sch. Dist.*, 738 A.2d 974, 976–78 (N.J. Super. Ct. App. Div. 1999); *State ex rel. Norman v. Viebranz*, 483 N.E.2d 1176, 1178 (Ohio 1985); *Mullinax v. Garrison*, 373 S.E.2d 471, 472–73 (S.C. 1988); *Turner v. Shumlin*, 163 A.3d 1173, 1186–88 (Vt. 2017) (per curiam).

[3] These instances are discussed in the Rehnquist Memorandum and *Power of the President to Nominate*. In the time available, we have not been able to verify the accuracy of all the dates represented in those writings.

George Sutherland, who was appointed on September 5, 1922, to succeed Justice John Clarke, who did not retire until September 18, 1922, *id.* at 159; and Edwin M. Stanton, who was appointed on December 20, 1869, to succeed Justice Robert Cooper Grier, who had announced his resignation effective February 1, 1870, *id.* at 158.[4] *See also id.* at 166 (app. II) (additional examples). Our writings also indicate that, on at least one occasion, a judicial officer has been appointed many months before taking the oath and entering on the duties of the office. In the Rehnquist Memorandum, the Office noted that Congressman Oren Harris was confirmed by the Senate to a judicial office on August 11, 1965, and commissioned on August 12, 1965, but that he did not take office until February 3, 1966, nearly six months after the date of his appointment. Rehnquist Memorandum at 1.

Here, Justice Breyer notified the President that he would retire upon the Court's adjournment for summer recess in June or July of this year, assuming that his successor had been confirmed. *See* Breyer Resignation Letter. The anticipated date of the vacancy—approximately three months from now—is plainly within the President's current term of office and consistent with the past exercises of prospective appointment authority cited above. The President, thus having appointment authority at the time the vacancy is expected to arise, may perform in advance the "last act" in the three-step appointment process set out in *Marbury* and appoint Judge Jackson as an Associate Justice, signified by his signing of her commission.

## II.

The President's signing of Judge Jackson's commission would complete her appointment, bringing to an end the President's and the Senate's role in the process. *See Marbury*, 5 U.S. at 162; *United States v. Le Baron*, 60 U.S. (19 How.) 73, 78 (1856). As the final act of appointment, the execution of the commission would render the Senate's consent final. Rehnquist Memorandum at 3–4; *see also United States v. Smith*, 286 U.S. 6, 43–44, 48–49 (1932).

---

[4] Edwin Stanton died on December 24, 1869, and never assumed office as an Associate Justice.

The completion of the appointment, however, does not mean that Judge Jackson assumes the office of Associate Justice. Rather, her entry on the duties of the office remains contingent on Justice Breyer's resignation becoming effective. Justice Breyer, as a judicial officer with life tenure, cannot be displaced from his office by the President's appointment of a successor. (This is in contrast to executive officers who serve at the pleasure of the President and may be removed from office by the President's act of appointing someone else in their place. *See The Constitutional Separation of Powers Between the President and Congress*, 20 Op. O.L.C. 124, 154 (1996).) Although Justice Breyer has submitted his resignation to the President, he "remains in office until the condition[s] [of his resignation] occur." *Power of the President to Nominate*, 3 Op. O.L.C. at 157. Once Justice Breyer's resignation becomes effective, Judge Jackson would then take the oaths as prescribed by the Constitution and statute. U.S. Const. art. VI, cl. 3; 28 U.S.C. § 453.

### III.

We therefore conclude that the President, through the signing of a commission, may prospectively appoint Judge Jackson as an Associate Justice in advance of the vacancy expected to arise upon Justice Breyer's retirement.

CHRISTOPHER H. SCHROEDER
*Assistant Attorney General*
*Office of Legal Counsel*